**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| SHRANDA CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:19-cv-03827 |
| | ) | |
| vs. | ) | *Pending reassignment to:* |
| | ) | Honorable Robert M. Dow, Jr. from |
| FORD MOTOR COMPANY, | ) | Honorable John Z. Lee |
| | ) | |
| Defendant. | ) | |

**DEFENDANT FORD MOTOR COMPANY'S ANSWER TO**
**<u>PLAINTIFF SHRANDA CAMPBELL'S THIRD AMENDED COMPLAINT</u>**

For its Answer to Plaintiff Shranda Campbell's Third Amended Complaint ("TAC")[1], Defendant Ford Motor Company ("Ford" or "Defendant") responds as follows:

<u>**Nature of Case**</u>

1.     This is a proceeding for declaratory and injunctive relief and damages to redress the deprivation of Plaintiff's civil rights under Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e et seq.) ("Title VII"), and under 42 U.S.C. § 1981 ("Section 1981").

**<u>ANSWER:</u>**     Paragraph 1 of the TAC merely recites purported causes of action that Plaintiff presumably seeks to assert against Ford and therefore does not require a response. To the extent a response is required, Ford denies that Plaintiff's claims have merit and denies that it violated the above statutes or state law as alleged.

---

[1] Although styled as Plaintiff's "Third Amended Complaint," this is Plaintiff's first individual complaint in this separate action.

## Jurisdiction and Venue

2.      Jurisdiction over the Plaintiffs' federal law claims exists pursuant to 28 U.S.C. § 1331 as these claims involve Federal Questions under Title VII (42 U.S.C. § 2000e) and Section 1981 (42 U.S.C. § 1981 and §1981a).

**ANSWER:**   Paragraph 2 of the TAC contains allegations of jurisdiction to which no answer is required.

3.      This Court has Supplemental Jurisdiction pursuant to 28 U.S.C. § 1367 over the Plaintiff's state law claims which arise out of the same nucleus of operative fact giving rise to the federal law claims.

**ANSWER:**   Paragraph 3 of the TAC contains allegations of jurisdiction to which no answer is required.

4.      Venue is appropriate in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) as the unlawful employment practices stated herein were, in whole or in part, committed within the Northern District of Illinois. Venue further lies within this judicial district under 28 U.S.C. § 1391(c), since Defendant Ford Motor Company does business in this judicial district at least by operating plants in Illinois.

**ANSWER:**   Paragraph 4 of the TAC contains allegations of jurisdiction to which no answer is required. Ford admits that it operates the Chicago Assembly Plant and the Chicago Stamping Plant in the Northern District of Illinois. Ford denies committing any unlawful employment practices and denies all remaining allegations in paragraph 4.

## Parties

5.      Plaintiff SHRANDA CAMPBELL is a legal adult and resident of Cook County, Illinois.  Plaintiff was harmed by the Defendant in Cook County, Illinois.

**ANSWER:** Ford admits Plaintiff is over the age of 18. Ford is without knowledge or information sufficient to admit or deny Plaintiff's current residence. Ford denies all remaining allegations in paragraph 5, including but not limited to any allegation that Plaintiff suffered harm as a result of any act by Ford.

6. Defendant FORD MOTOR CORP is a corporation with a principal place of business at 1 American Rd. Dearborn, MI 48126. The Defendant harmed Plaintiff in Cook County, Illinois at its assembly plant located at 12600 S Torrance Ave. Chicago, Illinois 60633.

**ANSWER:** Ford admits that it is a Delaware Corporation with its principle place of business in Dearborn, Michigan and that it operates an assembly Plant at 12600 S. Torrence Ave., Chicago, Illinois. Ford denies that Plaintiff was employed at the Torrence Avenue facility and further denies the remaining allegation in paragraph 6, including but not limited to any allegation that Plaintiff suffered harm as a result of any act by Ford.

### Facts

1. Plaintiff was employed by Ford.

**ANSWER:** Ford admits that Plaintiff was employed at Ford's Chicago Stamping Plant from October 3, 2011 to August 29, 2016.

2. Plaintiff is black (African-American).

**ANSWER:** Ford admits the allegation in this paragraph 2.

3. Plaintiff is female.

**ANSWER:** Ford admits the allegation in this paragraph 3.

4. Ford is a recidivist offender that willfully ignored the issues and evidence raised in prior litigation and EEOC findings and has failed to take measures to eradicate known discrimination and harassment from the workplace.

3

**ANSWER:**   This paragraph is the subject of a pending motion to strike.  To the extent a response is required, Ford denies the allegations in this paragraph 4.

5.     Ford knowingly allowed acts of sexual, racial, and retaliatory harassment to occur toward Plaintiff Campbell and fellow female and black employees.

**ANSWER:**   This paragraph is the subject of a pending motion to strike.  To the extent a response is required, Ford denies the allegations in this paragraph 5.

6.     Ford engaged in a pattern and practice of discrimination, harassment, retaliation at least towards Plaintiff and associates including, but not limited to:

    a.     Sexual assault and attempted rape;

    b.     Unwelcomed and unwanted sexual advances;

    c.     Requests for sexual favors;

    d.     Unwanted and unwelcomed touching and groping;

    e.     Being subjected to jeers, lewd comments, sexual suggestions, catcalls and the like;

    f.     Being stared at by male employees who were focused on certain parts of plaintiff's body and/or "elevator eyes";

    g.     Being subjected to comments or offers of sexual contact or males stating what they could or would like to do to Plaintiffs or other women;

    h.     Being subjected to men exposing their genitals and/or showing pictures of their genitals;

    i.     Being subjected to men sharing or displaying pornographic images in the workplace;

    j.     Graffiti in the workplace;

k.  By being ridiculed for having complained and/or being admonished not to complain in the future and/or not to use the harassment hotline;

l.  Female employees are referred to as "bitches," "hoes," "whores," "sluts" and "dogs" on an ongoing basis;

m.  Sexually offensive graffiti is painted on the walls in the plants and defendants did not take effective corrective action;

n.  Male employees also place sexually offensive graffiti about female employees in the men's bathrooms;

o.  Male employees routinely undress in full view of female employees at various areas of the plant;

p.  Male employees fail to properly button their uniforms such that their pubic hair is exposed;

q.  Male employees would routinely stare at female employees in a sexually offensive manner;

r.  Male employees would routinely make crude and lewd comments directed at female employees, such as "Are you cold? I can tell that you are cold by looking at your nipples."

s.  Female employees are sometimes exposed to condoms thrown into their work areas or tool boxes;

t.  Female employees are subjected to whistles, offensive touching, gazing and comments such as "what color are your underclothes?" on a daily basis;

u. At various times, male employees would rub against females, pretending as though they dropped something on the floor;

v. In many instances, this harassment occurs in the presence of Ford's supervisors and Ford would take no disciplinary action, or insufficient action, against employees who engage in such sexually offensive conduct;

w. Defendants' Human Resources and Labor Relations personnel routinely reveal confidential medical information regarding female employees to Plaintiff's workers in the plants;

x. After such information is leaked, male employees subjected female employees to ridicule, offensive jokes and embarrassment;

y. Male employees have historically been paid for overtime that they did not work, while female employees are required to work every hour that they are paid;

z. Males are allowed personal days even when not entitled to them, while female employees are harassed and are not given such days off;

aa. Female employees that complained were written up or threatened with termination;

bb. Ford's male supervisors routinely assigned tasks to employees on a discriminatory basis by assigning better tasks to those female employees who submit to their sexual advances or who agree to go out with them;

cc. The less desirable tasks would be assigned to the female employees who reject or do not submit to their sexual advances;

dd.    On many occasions, female employees would see soiled sanitary napkins moved from the ladies' room to the aisles where they are in full view of male employees and supervisors;

ee.    Males would make lewd comments such as "look at these -- old nasty bitches" as they walked past;

ff.    Male employees and supervisors regularly sabotage the work areas of female employees in different and innumerable ways;

gg.    On numerous occasions, female employees would have phallic symbols (penis-like objects) thrown in their work areas, tool boxes, or thrown at them. Such objects would sometimes be carved out of rubber hoses, Styrofoam, etc. by some male employees during their breaks;

hh.    Some female employees would frequently find pictures of penises placed on their tool boxes or work areas;

ii.    On a daily basis, women are harassed, denigrated and referred to as "bitch" stupid bitch," "you fucking people," mother-fuckers, "cunt," and "fucking bitches";

jj.    Male employees and supervisors call woman who make sexual harassment complaints "snitch bitches";

kk.    At various locations in Defendant's plants, posters and drawings that are humiliating to women are posted or displayed, including: pictures and posters of nude women, sex organs, female private parts, people performing sex acts, lesbians having intercourse, penises, pictures of black

women performing oral sex on white men, etc. Some of these pictures are in full view at various places throughout the plants.

**ANSWER:**     This paragraph is the subject of a pending motion to strike.  To the extent a response is required, Ford denies the allegations in this paragraph 6, including but not limited to the allegation that it engaged in a pattern or practice of conduct as alleged in subparagraphs (a)-(kk). Ford avers that it has received complaints of some of the behavior alleged in this paragraph and that it appropriately responded.

7.     Male employees routinely make discriminatory and harassing remarks and gestures in front of supervisors and managers who take no action to discipline employees, to eradicate the harassment or maintain an appropriate workplace environment.

**ANSWER:**     This paragraph is the subject a pending motion to strike. To the extent a response is required, Ford denies the allegations in this paragraph 7.

8.     Defendant maintained a pattern and practice of inferior treatment of females, including Plaintiff, with respect to the terms and conditions of employment, including job assignments, harassment, training, promotions and overtime assignments.

**ANSWER:**     This paragraph is the subject a pending motion to strike. To the extent a response is required, Ford denies the allegations in this paragraph 8.

9.     Ford is aware of the ongoing discrimination and harassment which occurs on a daily basis in an open manner, such that it is observed by employees and supervisors, and has turned a blind eye toward it.

**ANSWER:**     This paragraph is the subject a pending motion to strike. To the extent a response is required, Ford denies the allegations in this paragraph 9.

**COUNT 1**
**TITLE VII-SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT**

10.     Plaintiff adopts, realleges and incorporates by reference the allegations contained in previous paragraphs of this Complaint.

**ANSWER:**     Ford adopts its responses to the preceding paragraph of the TAC as if fully set forth herein.

11.     Plaintiff Campbell incorporates by reference her separate EEOC charges related to sexual harassment she experienced at Ford.

**ANSWER:**     Ford incorporates its responses to the preceding paragraphs of the TAC as if fully set forth herein. Ford further denies the allegations of wrongful conduct contained in the cited EEOC Charge.

12.     Supervisor Rich Murray pushed his penis/pelvis into/against Shranda Campbell's buttocks.

**ANSWER:**     Ford denies the allegations in paragraph 12.

13.     Supervisor Rich Murray inappropriately touched Campbell's shoulders, waist and body making her feel uncomfortable and violated.

**ANSWER:**     Ford denies the allegations in paragraph 13.

14.     Campbell was told by fellow worker Kim Sykes that a male co-worker physically assaulted her a with a "half-nelson" while using his free arm to grope Sykes' buttocks.

**ANSWER:**     Ford denies the allegations in paragraph 14.

15.     In Campbell's presence, Ford employee Kevin Clayton stated, "Only thing black girls can do for me is suck my dick."

**ANSWER:**     Ford is without sufficient information to admit or deny the allegation in paragraph 15 and therefore denies same.

9

16.     Campbell witnessed Sykes having been called a bitch and whore by male employees because Sykes had complained of the aforementioned.

**ANSWER:**     Ford is without sufficient information to admit or deny the allegation in paragraph 16 and therefore denies same.

17.     Campbell witnessed a female employee performing oral sex on a team leader and that Campbell believes the act may have been nonconsensual.

**ANSWER:**     Ford denies the allegations in paragraph 17.

18.     When Campbell and her associate complained about being sexually assaulted, both were criticized and ridiculed for being "bitches" and "hoes" for complaining about sexual assaults.

**ANSWER:**     Ford denies the allegations in paragraph 18.

19.     In addition to sexually harassment and a hostile working environment described elsewhere in this Complaint, the Plaintiff suffered sexual harassment by having been subjected to a hostile working environment.

**ANSWER:**     Ford denies the allegations in paragraph 19

20.     Ford terminated Plaintiff for protected activity.

**ANSWER:**     Ford denies the allegations in paragraph 20.

21.     The foregoing incidents and others like them were severe or pervasive, altered the terms and conditions of Plaintiff's employment and subjected Plaintiff to a hostile workplace environment.

**ANSWER:**     Ford denies the allegations in paragraph 21.

22.     Plaintiff complaint about sexual harassment but Defendant failed to take prompt remedial action.

**ANSWER:**    Ford admits that Plaintiff complained to Ford concerning some alleged violations of Ford's anti-harassment policy.  Ford denies the remaining allegations in paragraph 22.

23.    As a direct and proximate result of the foregoing acts of sexual harassment, Plaintiff suffered damages, including lost time from work, anxiety, humiliation and emotional distress, and have otherwise suffered physical or psychological injuries.

**ANSWER:**    Ford denies the allegations in paragraph 23 and denies that Plaintiff is entitled to any recovery.

**PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests that this Court provide the following equitable and monetary relief:

a.    Order Ford to implement effective steps to eliminate and remediate harassment and discrimination in the workplace;

b.    Enjoin Ford from discriminating against or harassing the Named Plaintiff;

c.    Appoint a monitor to supervise workplace conditions in each plant for a period of at least five (5) years;

d.    Retain jurisdiction for the monitoring period to enforce the terms of any injunction, agreement or order;

e.    Award back pay, lost future earnings, and reimbursement for lost income and for lost fringe benefits;

f.    Award compensatory damages;

g.    Award liquidated damages, if applicable;

h.    Award punitive damages;

i.    Award prejudgment interest;

j.    Award reasonable attorney's fees, expert witness fees, expenses and Plaintiff's costs;

k.    Grant such Plaintiff's relief as the Court deems equitable and just.

**ANSWER:**    Ford denies that Plaintiff is entitled to any recovery or that Ford has engaged in any acts of harassment, discrimination or retaliation concerning Plaintiff.

**COUNT 2**
**TITLE VII-GENDER/SEX DISCRIMINATION**

24.    Plaintiff adopts, realleges and incorporates by reference the allegations contained in previous paragraphs of this Complaint.

**ANSWER:**    Ford incorporates its responses to the preceding paragraphs of the TAC as if fully set forth herein.

25.    Plaintiff was treated differently than her male counterparts.

**ANSWER:**    Ford denies the allegations in paragraph 25.

26.    Plaintiff was subjected to a hostile working environment, sexual harassment, gender discrimination and discriminatory comments from supervisors and coworkers which males are not required to endure as a condition of their employment.

**ANSWER:**    Ford denies the allegations in paragraph 26.

27.    Plaintiff was given different work assignments than male counterparts and told that they are not being assigned to perform certain tasks "because they are women."

**ANSWER:**    Ford admits that there are thousands of jobs at the facility where Plaintiff worked and that both male and female employees may be assigned to different job assignments for a variety of legitimate, business-related reasons. Ford denies that Plaintiff was given different work assignments based on gender. Ford denies all remaining allegations in paragraph 27.

28.    Ford failed to stop and/or remedy this ongoing harassment, and male supervisors and employees continue to openly refer to women as "bitches" and to women who complain as "snitch bitches."

**ANSWER:**    Ford denies the allegations in paragraph 28.

29.    Ford failed to promptly discipline or reassign any males about whom Plaintiff complained and did not conduct a thorough or timely investigation of Plaintiff's complaints.

**ANSWER:**    Ford denies the allegations in paragraph 29.  Ford further avers that it is not required to discipline or reassign male employees each time a complaint is made, regardless of whether the complaint is corroborated, as suggested by this allegation.

30.    As a direct and proximate result of the foregoing acts of gender discrimination, Plaintiff was damaged in that she lost and/or was deprived of income opportunities, suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER:**    Ford denies the allegations in paragraph 30 and denies that Plaintiff is entitled to any recovery.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests that this Court provide the following equitable and monetary relief:

a.    Order Ford to implement effective steps to eliminate and remediate harassment and discrimination in the workplace;

b.    Enjoin Ford from discriminating against or harassing the Named Plaintiff and Ford's employees;

c. Appoint a monitor to supervise workplace conditions in each plant for a period of at least five (5) years;

d. Retain jurisdiction for the monitoring period to enforce the terms of any injunction, agreement or order;

e. Award back pay, lost future earnings, and reimbursement for lost income and for lost fringe benefits;

f. Award compensatory damages;

g. Award liquidated damages, if applicable;

h. Award punitive damages;

i. Award prejudgment interest;

j. Award reasonable attorney's fees, expert witness fees, expenses and Plaintiff's costs;

k. Grant such Plaintiff's relief as the Court deems equitable and just.

**ANSWER:** Ford denies that Plaintiff is entitled to any recovery or that Ford has engaged in any acts of harassment, discrimination or retaliation concerning Plaintiff.

## COUNT 3
## RACE DISCRIMINATION UNDER §1981

31. Plaintiff adopts, realleges and incorporates by reference the allegations contained in previous paragraphs of this Complaint.

**ANSWER:** Ford incorporates its responses to the preceding paragraphs of the TAC as if fully set forth herein.

32. Defendant's treatment of the Plaintiff denied her the full and equal treatment benefit of all laws for the security of persons and property "as is enjoyed by white citizens" in violation of 42 U.S.C. §1981.

14

**ANSWER:** Ford denies the allegations in paragraph 32 and denies that it has violated the cited statute.

33. Plaintiff was subjected to a racially hostile workplace environment that provided white employees more favorable terms and conditions of employment, including, but not limited to:

    **ANSWER:** Ford denies the allegations in the introductory portion of paragraph 33.

        i.    White employees are given preference in promotions, especially at Ford's Stamping Plant;

    **ANSWER:** Ford denies the allegations in paragraph 33(i).

        ii.    Ford promotes some hourly employees into lower-level managers roles, carrying titles of "Team Leaders" and "Utilities" (Utilities assist Team Leaders and serve in their place in their absence).

    **ANSWER:** Ford denies that Team Leaders and Utilities are "lower level managers" and that Utilities' job functions consist of assisting Team Leaders. Ford admits that hourly employees are, at times, selected into hourly classifications of Utilities and Team Leaders. Ford denies all remaining allegations in paragraph 33(ii).

        iii.    Ford, through its white Supervisors, including Brad Swing and Roy Erdman trained Exum, Campbell and other African American employees as "Utilities" and had them working for many months in that position in an "acting as" capacity.

    **ANSWER:** Ford denies the allegations in paragraph 33(iii). Ford avers that employees are cross-trained, at times, for purposes of versatility.

vi[2]. Ford promoted a white co-worker from the assembly line who had not been previously trained as a Utility named Kevin Clay into the Utility position over Plaintiff Campbell and other African American employees that had been trained for that position and who had been "acting as" Utilities.

**ANSWER:** Ford denies the allegations in paragraph 33(vi). Ford further avers that Kevin Clay is African American.

vii. Ford did not officially promote Campbell nor pay her the same hourly rate for similar work being performed by other white Utilities on their shift and in their department.

**ANSWER:** Ford denies the allegations in paragraph 33(vii).

viii. Of approximately twelve (12) Utilities on First Shift, none were black.

**ANSWER**: Ford denies the allegations in paragraph 33(viii).

ix. Eventually, Campbell was informed that if she wanted to work as a Utility, she needed to apply for an open Utility position on 3rd Shift – a less desirable shift.

**ANSWER**: Ford denies the allegations in paragraph 33(ix). Ford avers that job postings may be shift-specific and that employee seniority generally governs shift assignment consistent with the terms of the collective bargaining agreement. Ford further avers that which shift is or is not "desirable" is a matter of individual employee preference.

x. Since moving to Third Shift, Campbell has experienced that white Supervisors Ed Smith and Mark Olsen repeatedly deny black female

---

[2] Ford notes that the TAC is missing sub-paragraphs numbered 33iv and v.

employees including herself and Deedee Perkins proportional overtime opportunities relative to similarly situated white employees.

**ANSWER:** Ford denies the allegations in paragraph 33(x). Ford avers that overtime availability is based on a variety of legitimate factors, but not on race.

xi. Smith and Olsen are frequently given overtime to white male employee Octavia to perform Set-up Utility work, despite that his job classification is as a Schuler, because Campbell, Perkins and other African Americans would otherwise receive the overtime chance by virtue of being at the top of the Overtime Equalization list.

**ANSWER:** Ford denies the allegations in paragraph 33(xi).

xii. Campbell and Perkins complained about this to Don Byers, but when Byers investigated, he found that Olsen admitted misclassifying Octavia to allow him overtime, but that Olsen refused to provide equal overtime opportunities to African American utilities.

**ANSWER:** Ford is without knowledge or information sufficient to either admit or deny what information may have been shared with UAW representative Don Byers and therefore denies the same. Ford denies all remaining allegations in paragraph 33(xii).

xvii. In 2015, Campbell was interviewed, and other African American employees applied for a promotion to "Team Leader."

**ANSWER:** Ford admits the allegations in paragraph 33(xvii).

xviii. Campbell was told she "did not have enough knowledge" for the position, however, Tracy Longtin, a white coworker with less than one year of

17

seniority and experience at Ford was promoted to that Team Leader position.

**ANSWER:**     Ford admits that Tracy Longtin was selected as a Team Leader and that she is Caucasian. Ford denies all remaining allegations in paragraph 33(xviii).

34.     Between 2012 and the present, Ford has tolerated a racially Discriminatory workplace environment in which symbols of racism are permitted to be posted and to remain in plain sight of African American employees, such as:

**ANSWER**:     Ford denies the allegations in the introductory portion of paragraph 34.

i.     A noose has been hung in the Stamping Plant in plain view of African American employees, including Exum and Campbell;

**ANSWER:**     Ford denies the allegations in paragraph 34(i).

ii.     Constant reminders of racism have been painted in the restroom and Campbell and other African American employees have been forced to endure these reminders. By way of example, these statements have included "Why did you hire all these niggers?" Despite numerous complaints, Ford permitted this particular statement to remain posted in the restroom for a substantial period of time.

**ANSWER:**     Ford admits that on one occasion in March 2015, graffiti was found on a restroom wall at the Chicago Stamping Plant with language similar to that quoted. Ford denies that it allowed the statement to remain in the restroom for a substantial period of time. Ford avers that it promptly removed the graffiti. Ford denies all remaining allegations in paragraph 34(ii).

35.     Racial (and sexist) epithets have been yelled by white employees toward black employees at the Stamping plants, including in Plaintiff's presence, including that Campbell has

recently experienced a white employee named Larry yelling that an African American female Sharon Hawkins was a "black nigger bitch" while threatening to stab her with a screwdriver.

**ANSWER:**    Ford denies the allegations in paragraph 35.

36.    As a result of the foregoing intentional conduct, Plaintiff has been denied equal rights and have been denied equal enjoyment of the benefits, privileges, terms and conditions of employment as white employees.

**ANSWER:**    Ford denies the allegations in paragraph 36 and incorporates its responses to paragraphs 31 to 35 (including sub-parts) which appear to be the "foregoing intentional conduct" alleged in this paragraph.

37. As a direct and proximate result of the foregoing acts of racial discrimination, Plaintiff was damaged in that she lost and/or was deprived of income opportunities, suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER:**    Ford denies the allegations in paragraph 37 and denies that Plaintiff is entitled to any recover.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests that this Court provide the following equitable and monetary relief:

a.    Order Ford to implement effective steps to eliminate and remediate harassment and discrimination in the workplace;

b.    Enjoin Ford from discriminating against or harassing the Named Plaintiff and Ford's employees;

c.      Appoint a monitor to supervise workplace conditions in each plant for a period of at least five (5) years;

d.      Retain jurisdiction for the monitoring period to enforce the terms of any injunction, agreement or order;

e.      Award back pay, lost future earnings, and reimbursement for lost income and for lost fringe benefits;

f.      Award compensatory damages;

g.      Award liquidated damages, if applicable;

h.      Award punitive damages;

i.      Award prejudgment interest;

j.      Award reasonable attorney's fees, expert witness fees, expenses and Plaintiff's costs;

k.      Grant such Plaintiff's relief as the Court deems equitable and just.

**ANSWER:**     Ford denies that Plaintiff is entitled to any recovery or that Ford has engaged in any acts of harassment, discrimination or retaliation concerning Plaintiff.

**COUNT 4**
**TITLE VII-RETALIATION**

38.     Plaintiff incorporates by reference the allegations contained in previous and in her EEOC Charge.

**ANSWER:**     Ford incorporates its responses to the preceding paragraphs of the TAC as if fully set forth herein. Ford further denies the allegations of wrongful conduct contained in the cited EEOC Charge.

39. Plaintiff was retaliated against for refusing and complaining about sexual advances, comments, innuendo, and lurid foul and offensive language.

20

**ANSWER:**    Ford denies the allegations in paragraph 39.

40.    In retaliation for the Plaintiff's complaints and for filing charges of discrimination with the EEOC, Ford retaliated against this Plaintiff in the following ways:

**ANSWER:**    Ford denies the allegations in the introductory portion of paragraph 40.

a.    repeatedly assigning unfair discipline against Plaintiff in an effort to write her up;

**ANSWER:**    Ford admits that Plaintiff has been disciplined multiple times during her employment for a variety of reasons, but denies that Plaintiff was ever unfairly disciplined or that any discipline was in retaliation for engagement in protected activity. Ford denies all remaining allegations in paragraph 40(a).

b.    After Plaintiff complained about being sexually harassed by Rich Murray, Murray told Plaintiff "you aren't running the line anymore";

**ANSWER:**    Ford denies the allegations in paragraph 40(b).

c.    Although Plaintiff had been "acting as" a Utility (PTM worker) and was due for a raise and official promotion in title, Murray refused to officially promote Plaintiff;

**ANSWER**:    Ford denies the allegations in paragraph 40(c).

d.    Murray demoted Plaintiff from working as a Utility and reassigned her back to a non-managerial position on the production line;

**ANSWER:**    Ford denies the allegations in paragraph 40(d). Ford avers that promotions and job assignments are determined based on a variety of legitimate factors, but not based on protected activity.

e.    sent Plaintiff home early for the remainder of a shift without pay;

21

**ANSWER**:    Ford denies the allegations in paragraph 40(e). Ford avers Plaintiff was disciplined prior to her complaint about Murray, in which she received a balance of shift penalty for being out of her work area after she had been previously counseled for the offense, but denies that it was in retaliation for any protected activity.

        f.     denied Plaintiff overtime opportunities that were otherwise offered to employees who did not complain.

**ANSWER:**    Ford denies that Plaintiff was denied overtime opportunities in retaliation for any protected activity. Ford further avers that overtime opportunities are determined based on a variety of legitimate factors, but not on protected activity. Ford denies all remaining allegations in paragraph 40(f).

41.    Ford's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER:**    Ford denies the allegations in paragraph 41, including but not limited to the allegation that Plaintiff was subject to retaliatory acts.

42.    Plaintiff's complaints and the filing of this lawsuit led to or was a major factor in the adverse employment actions she suffered.

**ANSWER:**    Ford denies the allegations in paragraph 42, including but not limited to the allegation that Plaintiff was subject to adverse employment actions.

43. As a direct and proximate result of the foregoing acts of retaliation, Plaintiff has been damaged in that she has lost or been deprived of income opportunities, has suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER:**    Ford denies the allegations in paragraph 43 and denies that Plaintiff is entitled to any recovery.

## **PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests that this Court provide the following equitable and monetary relief:

a.      Order Ford to implement effective steps to eliminate and remediate harassment and discrimination in the workplace;

b.      Enjoin Ford from discriminating against or harassing the Named Plaintiff and Ford's employees;

c.      Appoint a monitor to supervise workplace conditions in each plant for a period of at least five (5) years;

d.      Retain jurisdiction for the monitoring period to enforce the terms of any injunction, agreement or order;

e.      Award back pay, lost future earnings, and reimbursement for lost income and for lost fringe benefits;

f.      Award compensatory damages;

g.      Award liquidated damages, if applicable;

h.      Award punitive damages;

i.      Award prejudgment interest;

j.      Award reasonable attorney's fees, expert witness fees, expenses and Plaintiff's costs;

k.      Grant such Plaintiff's relief as the Court deems equitable and just.

**ANSWER:**    Ford denies that Plaintiff is entitled to any recovery or that Ford has engaged in any acts of harassment, discrimination or retaliation concerning Plaintiff.

## **COUNT 5**
## **BATTERY**

44.     Plaintiff adopts and incorporates by reference the allegations in Previous paragraphs.

**ANSWER:**     Ford incorporates its responses to paragraphs 1-43 as if fully set forth herein.

45.     Plaintiff was subjected to a harmful or offensive touching, without her consent, by one or more of the Defendant's supervisors, managers and/or employees.

**ANSWER:**     Ford denies the allegations in paragraph 45.

46.     Defendant took no steps to prevent Plaintiff from suffering a battery.

**ANSWER:**     Ford denies the allegations in paragraph 46, including but not limited to the allegation that Plaintiff suffered a battery.

47.     The supervisors, managers and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

**ANSWER:**     Ford denies the allegations in paragraph 47.

48.     As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

**ANSWER:**     Ford denies that Plaintiff suffered any actionable injury or that she is entitled to recover hereunder. Ford denies the remaining allegations in Paragraph 48.

## **PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests that this Court provide the following equitable and monetary relief:

a.     Award compensatory damages;

b.      Award prejudgment interest;

c.      Award reasonable attorney's fees, expert witness fees, expenses and Plaintiff's

costs;

d.      Grant such Plaintiff's relief as the Court deems equitable and just.

**ANSWER:**    Ford denies that Plaintiff is entitled to any recovery or that Ford has

engaged in any acts of harassment, discrimination or retaliation concerning Plaintiff.

### COUNT 6, NOPT OPERABLE. PRESERVED FOR APPEAL
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

49.     The Plaintiff adopts, realleges and incorporates by reference all of the allegations

in previous paragraphs.

50.     Defendant, through its supervisors, managers and employees, intended to cause

Plaintiff severe emotional distress.

51.     Defendant's conduct and the conduct of its supervisors, managers and employees

was extreme, outrageous and beyond the bounds of moral decency.

52.     Defendant's conduct and the conduct of its supervisors, managers and employees

was so outrageous that no reasonable person could be expected to endure it.

53.     As a direct and proximate result of the Defendant's conduct and the conduct of its

supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was

damaged.

**ANSWER:**    Answering paragraph 49-53, Ford states that no responsive pleading is

required. The Court has previously dismissed this claim and Plaintiff re-pleads it for "purposes

of appeal." To the extent a further response is required, Ford denies the allegations in Count 6

and incorporates its prior responses to paragraphs 1-53 as if fully set forth herein.

### PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests that this Court provide the following equitable and monetary relief:

      a.      Award compensatory damages;

      b.      Award prejudgment interest;

      c.      Award reasonable attorney's fees, expert witness fees, expenses and Plaintiff's costs;

      d.      Grant such Plaintiff's relief as the Court deems equitable and just.

**ANSWER:**    Ford denies that Plaintiff is entitled to any recovery.

## PLAINTIFF DEMANDS A TRIAL BY JURY

**ANSWER**: Ford denies that Plaintiff is entitled to any of the relief requested in the TAC, including in the "Prayer for Relief." Ford admits that Plaintiff seeks a trial by jury on claims so triable.

54.    Ford denies each and every allegation in the TAC not heretofore specifically admitted.

## FURTHER ANSWER AND DEFENSES

In addition to the denials set forth above, Ford asserts the following defenses. In pleading these defenses, Ford does not admit that it bears the burden of proof, production or persuasion on such defenses. Further, Ford reserves the right to amend its Answer, to add or delete defenses, and to add such counterclaims as may become necessary after reasonable opportunity for investigation and discovery.

1.    The TAC, in whole or in part, fails to state a claim upon which relief can be granted because Plaintiff cannot satisfy each of the elements of the causes of action asserted, including hostile work environment (gender and race), gender discrimination, race

discrimination, retaliation, civil battery, and intentional infliction of emotional distress ("IIED") under applicable law.

2.     Plaintiff's claims under Title VII are barred in whole or in part to the extent Plaintiff failed to satisfy administrative prerequisites to filing suit, including but not limited to timely filing an administrative charge and/or timely filing suit after receiving notice of the right to sue.

3.     Plaintiff's Title VII claims are barred to the extent relief is sought for alleged acts outside the scope of the charge of discrimination on which she relies for her Title VII claims in this lawsuit.

4.     Plaintiff's claims are barred, in whole or in part, by applicable limitations periods, to the extent she asserts liability claims from before the start of such limitations periods.  For example, a Plaintiff failing to file an appropriate EEOC charge within 300 days of any alleged violation may not assert such claims under Title VII.

5.     Plaintiff's claims may be barred in whole or in part by reason of her own actions or course of conduct under the doctrines of estoppel, waiver, or unclean hands.  For example, to the extent Plaintiff has misrepresented the value of and/or failed to disclose her alleged claims in this suit to a bankruptcy court, she is estopped or otherwise barred from pursuing such claims.

6.     Plaintiff's claims are barred to the extent she has failed to mitigate damages or otherwise avoid harm, and any recovery must be reduced accordingly.  For example, to the extent Plaintiff was discharged, she could mitigate damages by promptly seeking employment with another employer.

7.     Plaintiff's damages, if any, were caused by her own actions or failure to act or otherwise caused by individuals or events over whom/which Defendant had no control.

8.   Plaintiff's hostile work environment claims are barred in whole or in part to the extent Plaintiff cannot show that Ford knew or should have known of alleged harassment and failed to take prompt and effective remedial action.

9.   Alternatively, Plaintiff's hostile work environment claims are barred because Ford acted reasonably in accordance with Ford's policies by exercising reasonable care to prevent and promptly correct any alleged harassing behavior, and Plaintiff unreasonably or untimely failed to avail herself of preventive or corrective opportunities provided, or otherwise failed to avoid harm.

10.   Plaintiff's hostile work environment claims are barred to the extent that alleged tangible, adverse employment actions were not causally related to the alleged conduct of any Ford salaried personnel as set forth in the TAC.

11.   Plaintiff's claims are barred to the extent the acts about which Plaintiff complains do not constitute adverse employment actions or tangible adverse employment actions under applicable law.

12.   Plaintiff's claims are barred because the employment actions complained of herein were based upon legitimate, non-discriminatory and non-retaliatory reasons. Alternatively, Ford would have taken the same employment actions in any event for legitimate reasons.

13.   Any recovery of damages for purported violations of Title VII is limited to the statutory maximum under applicable law.

14.   Plaintiff's claim for damages should be offset or reduced to the extent such claimed damages are compensated by other sources or caused by events unrelated to Defendant's conduct.

15.     To the extent any alleged intentional discriminatory and/or wrongful conduct was committed by Defendant's agents (which Defendant denies), said conduct was outside the scope of the agent's authority and was contrary to Defendant's good faith efforts to comply with applicable law.

16.     Defendant is not liable for punitive damages because employment actions about which Plaintiff complains were taken consistent with the collective bargaining agreement.

17.     Plaintiff is not entitled to punitive damages, and any award of punitive damages may violate the U.S. Constitution and/or the Illinois Constitution, because Ford did not commit any malicious act against Plaintiff or with reckless indifference to the rights of Plaintiff.

18.     Plaintiff's claims for punitive damages are barred because Ford engaged in good faith efforts to comply with Title VII.

19.     Plaintiff's claims for punitive damages are barred because no salaried personnel of Ford acted with the requisite mental state toward Plaintiff.

20.     To the extent allegations in this case relate to events that purportedly occurred years before this lawsuit was filed, the passage of time has prejudiced Ford because, among other things, witnesses' recollection of events have dimmed, witnesses are no longer employed by Ford or available for purposes of discovery or trial.  Accordingly, evidence in support of any such claims and any relief requested is barred by the doctrine of laches.

21.     Plaintiff's claims are barred to the extent she fails to plead or prove elements of such claims in accordance with Court Orders under the law of the case doctrine.

22.     Plaintiff's state law claims are barred under the Labor Management Relations Act to the extent such claims call for interpretation of provisions in the collective bargaining agreement.

23.     Plaintiff's state law tort claims for battery and IIED are barred because Plaintiff's remedy, if any, for such injuries is governed by the Illinois Workers' Compensation law.[3]

24.     Any claim for equitable relief may be barred because Plaintiff has an adequate remedy at law.

25.     Plaintiff's state law tort claims for IIED are barred as preempted by the Illinois Human Rights Act. *See* nt. 2 supra.

26.     To the extent that Plaintiff could have been disciplined based on evidence acquired during discovery in this case, any recovery by such Plaintiff is limited by the doctrine of after acquired evidence.

27.     Ford objects to any allegations contained in the TAC that are inconsistent with the agreement reached between the parties (Dkt. 389) and the related Order of the Court (Dkt. 391).

28.     Ford reserves its right to amend and state additional defenses upon further investigation and discovery.

WHEREFORE, having fully answered Plaintiff Shranda Campbell's Third Amended Complaint, Defendant Ford Motor Company prays that:

A.     Plaintiff Shranda Campbell's Third Amended Complaint be dismissed with prejudice and that Plaintiff take nothing thereby;

B.     Ford be awarded its costs and reasonable attorneys' fees incurred in connection with the defense of this action; and

C.     Ford be awarded such other and further relief as the Court deems just and proper.

---

[3] Since Plaintiff has realleged her IIED claims to preserve them for appeal, Defendant asserts this defense to IIED. *See Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill.2d 150, 153, 449 N.E.2d 125 (1983).

DATED:  June 28, 2019                            Respectfully submitted,

                                             **BERKOWITZ OLIVER LLP**

                                        By:    /s/ Kathleen M. Nemechek          
                Kathleen M. Nemechek. N.D. Ill. No. 50139
                Timothy S. Millman, N.D. Ill. No. 44398
                2600 Grand Boulevard, Suite 1200
                Kansas City, Missouri 64108
                Telephone:  (816) 561-7007
                Facsimile:  (816) 561-1888

                *Counsel for Defendant Ford Motor Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of June 2019, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which provided electronic service upon:

        Christopher Cooper
        Law Office of Christopher Cooper, Inc.
        79 West Monroe Street, Ste. 1213
        Chicago, Illinois 60603
        (312) 473-2968
        cooperlaw3234@gmail.com

        *Counsel for Plaintiff*

                               /s/ Kathleen M. Nemechek           
                              **Counsel for Defendant Ford Motor Company**