**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| **SHRANDA CAMPBELL,** | |
| **Plaintiff,** | Case No. 1:19-cv-03827 |
| **v.** | |
| **FORD MOTOR COMPANY,** | |
| **Defendant.** | Honorable Martha M. Pacold<br>Honorable Jeffrey Cummings |

**DEFENDANT FORD MOTOR COMPANY'S ANSWER**
**TO PLAINTIFF SHRANDA CAMPBELL'S FOURTH AMENDED COMPLAINT**

For its Answer to Plaintiff Shranda Campbell's Fourth Amended Complaint ("FAC"),[1] Defendant Ford Motor Company ("Ford" or "Defendant") responds as follows:

**GENERAL DENIAL**

Except as specifically admitted herein, Ford denies each and every allegation contained in the FAC, including, without limitation, any allegations contained in the preamble, headings, subheadings or footnotes of the FAC, and specifically denies any liability to Plaintiff. Pursuant to Rule 8(d) of the Federal Rules of Civil Procedure, averments in the FAC to which no responsive pleading is required shall be deemed as denied. Ford expressly reserves the right to seek to amend or supplement its Answer as may be necessary.

---

[1] Although styled as Plaintiff's "Fourth Amended Complaint," this is Plaintiff's first amended complaint in this action, Case No. 1:19-cv-03827.

## ANSWER TO SPECIFIC ALLEGATIONS IN THE FAC

## JURISDICTION AND VENUE

1.     This is an action pursuant to the United States Constitution, the Title VII Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., as amended, and 42 U.S.C. §§ 1981 et seq., as amended.  This court has jurisdiction under and by virtue of 28 U.S.C §§ 1331, 1343 and 1367.

**ANSWER**: Paragraph 1 first recites purported causes of action that Plaintiff asserts against Ford and therefore does not require a response.  The remainder of paragraph 1 contains allegations of jurisdiction to which no answer is required.  To the extent a response is required, Ford denies that Plaintiff's claims have merit and denies that it violated the above statutes as alleged.

2.     Venue is appropriate in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b) as the unlawful employment practices stated herein were, in whole or in part, committed within the Northern District of Illinois.  Venue further lies within this judicial district under 28 U.S.C. § 1391(c), since Defendant Ford Motor Company does business in this judicial district at least by operating plants in Illinois.

**ANSWER**:  Paragraph 2 contains allegations of venue to which no answer is required. Ford admits that it operates the Chicago Stamping Plant in the Northern District of Illinois.  Ford denies committing any unlawful employment practices.

## PARTIES

3.     At all times herein mentioned, Plaintiff, Shranda Campbell (hereinafter "Plaintiff"), was employed by the Defendant Ford Motor Company (hereinafter "Ford").

**ANSWER**:  Ford admits that Plaintiff was employed at Ford from November 21, 2001 until the termination of her employment on or about August 29, 2016.

4.      At all times herein mentioned, Defendant, Ford, was and is believed and alleged hereon to be a corporation operating within the jurisdiction of this Court.

**ANSWER**:  Ford admits that it is a Delaware corporation with its principal place of business in Dearborn, Michigan.  Ford admits that it operates the Chicago Stamping Plant in the Northern District of Illinois.

## FACTUAL ALLEGATIONS

5.      Plaintiff was employed by Ford from 2000 through her termination in 2016.

**ANSWER**:  Ford admits that Plaintiff was employed at Ford from November 21, 2001 until the termination of her employment on or about August 29, 2016.

6.      From 2011 until her termination, Plaintiff was employed at Ford's Chicago Stamping Plant.

**ANSWER**:  Ford admits that Plaintiff was employed at Ford's Chicago Stamping Plant from October 3, 2011 until the termination of her employment on or about August 29, 2016.

7.      Plaintiff is an African-American female.

**ANSWER**:  Ford admits the allegations in paragraph 7.

8.      Ford is a recidivist offender that willfully ignored the issues and evidence raised in prior litigation and EEOC findings and has failed to take measures to eradicate known discrimination and harassment from the workplace.

**ANSWER**:  Ford denies the allegations in paragraph 8.

9.      Ford knowingly allowed acts of sexual, racial, and retaliatory harassment to occur toward Plaintiff Campbell.

2

**ANSWER**:  This paragraph contains conclusions of law to which no response is required.  To the extent that this paragraph contains factual allegations that require a response, Ford denies the allegations in paragraph 9.

10.    Ford engaged in a pattern and practice of discrimination, harassment, retaliation towards Plaintiff including, but not limited to:

    a.   Sexual assault;

    b.   Unwelcomed and unwanted sexual advances;

    c.   Requests for sexual favors;

    d.   Unwanted and unwelcomed touching and groping;

    e.   Being subjected to jeers, lewd comments, sexual suggestions, catcalls and the like;

    f.   Being stared at by male employees who were focused on certain parts of Plaintiff's body;

    g.   Being subjected to comments or offers of sexual contact or males making offensive comments stating what they could or would like to do to Plaintiff or other women;

    h.   Being subjected to men exposing their genitals and/or showing pictures of their genitals;

    i.   Graffiti in the workplace;

    j.   By being ridiculed for having complained and/or being admonished not to complain in the future;

    k.   Being referred to as a "bitch" and "hoe";

l.  In many instances, this harassment occurs in the presence of Ford's supervisors and Ford would take no disciplinary action, or insufficient action, against employees who engage in such sexually offensive conduct;

m.  Ford's male supervisors routinely assigned tasks to employees on a discriminatory basis by assigning better tasks to those female employees who submit to their sexual advances or who agree to go out with them;

**ANSWER**:  This paragraph contains conclusions of law to which no response is required.  To the extent that this paragraph contains factual allegations that require a response, Ford denies the allegations, except to admit that it has received complaints of some of the behavior alleged in this paragraph and that it has responded appropriately to those complaints.

11.  Male employees routinely make discriminatory and harassing remarks or gestures in front of supervisors and managers who take no action to discipline employees, to eradicate the harassment or maintain an appropriate workplace environment.

**ANSWER**:  Ford denies the allegations in paragraph 11.

12.  Defendant maintained a pattern and practice of inferior treatment of females, including Plaintiff, with respect to the terms and conditions of employment, including job assignments, harassment, training, promotions and overtime assignments.

**ANSWER**:  This paragraph contains conclusions of law to which no response is required.  To the extent that this paragraph contains factual allegations that require a response, Ford denies the allegations.

13.  Ford was aware of the ongoing discrimination and harassment perpetrated against Plaintiff and fellow female employees that occurred on a daily basis in an open manner, such that it was observed by employees and supervisors, and Ford turned a blind eye toward it.

4

**ANSWER**:  Ford denies the allegations in paragraph 13.

<u>COUNT 1</u>
**TITLE VII-SEXUAL HARASSMENT AND HOSTILE WORK ENVIRONMENT**

14.     Plaintiff re-alleges and incorporates paragraphs one (1) through thirteen (13) as though fully set forth at this place.

**ANSWER**:  Ford adopts its responses to the preceding paragraphs of the FAC as if fully set forth herein.

15.     Plaintiff adopts and incorporates by reference her allegations of sexual harassment and of a hostile work environment alleged in her EEOC charges.

**ANSWER**:  Ford incorporates its responses to the preceding paragraphs of the FAC as if fully set forth herein.  Ford further denies the allegations of wrongful conduct contained in Plaintiff's EEOC Charge.

16.     Plaintiff has been subjected to sexual harassment including but not limited to the following ways:

  a.  Unwanted or unwelcome sexual advances;

  b.  Unwelcome or unwanted touching;

  c.  Requests for sexual favors;

  d.  Stories of sexual conquests, desires or escapades;

  e.  Comments about the female anatomy;

  f.  Comments about what a male "would like to do" to or with a female sexually;

  g.  Comments of a sexually suggestive nature;

  h.  Name calling using names demeaning towards women such as "slut" or "whore" or "hoe";

5

    i.   Pictures of genitalia and/or of a sexual nature;

    j.   Lurid, foul and offensive language and;

    k.   Other conduct of a sexually inappropriate nature for the workplace.

**ANSWER**: This paragraph contains conclusions of law to which no response is required. To the extent that this paragraph contains factual allegations that require a response, Ford denies the allegations, except to admit that it has received complaints of some of the behavior alleged in this paragraph and that it has responded appropriately to those complaints.

17.    Supervisor Rich Murray pushed his penis and/or pelvis into and/or against Plaintiff's buttocks.

**ANSWER**: Ford lacks knowledge or information sufficient to form a belief as to whether Plaintiff experienced this alleged conduct, and on that basis, denies the allegations in paragraph 17.

18.    Supervisor Rich Murray inappropriately touched Plaintiff's shoulders, waist, and body making her feel uncomfortable and violated.

**ANSWER**: Ford lacks knowledge or information sufficient to form a belief as to whether Plaintiff experienced this alleged conduct, or how Plaintiff 'felt' based on the alleged conduct, and on that basis, denies the allegations in paragraph 18.

19.    In addition to being sexually harassed Plaintiff was subjected to a hostile working environment in that she was forced to endure hostile working conditions in which other women were harassed. This hostile working environment included but was not limited to the following instances:

    a.   Having sex in the workplace, the parking lot, and other areas of the workplace;

    b.   Talking about sexual escapades which took place both in and outside of the workplace;

    c.   Making unwelcome requests for sexual favors and grotesque sexual acts;

    d.   Showing pictures of genitalia;

    e.   Commenting about women's vaginas and breasts in degrading and sexual ways;

    f.   Commenting about the desire to perform sex acts on Plaintiff and other women coworkers;

    g.   Jeering, making lewd comments, sexual suggestions and catcalls;

    h.   Referring to new female employees as "fresh meat";

    i.   Constantly staring at women's breasts and buttocks;

    j.   Offering better job assignments, better overtime opportunities, and better opportunities for promotions to female employees who submitted to their sexual advances;

    k.   Demoting and/or assigning Plaintiff and similarly situated female employees to less desirable job opportunities when they rejected male supervisors' requests;

**ANSWER**: This paragraph contains conclusions of law to which no response is required. To the extent that this paragraph contains factual allegations that require a response, Ford denies the allegations, except to admit that it has received complaints of some of the behavior alleged in this paragraph and that it has responded appropriately to those complaints.

20.     In addition, Plaintiff witnessed a male co-worker physically assault another woman Plaintiff closely worked with, Kim Sykes, giving her a "half-nelson" with one arm so she could not get away, while using his free arm to grope Syke's buttocks.

**ANSWER**:  Ford lacks knowledge or information sufficient to form a belief as to what Plaintiff  allegedly witnessed, and on that basis denies the allegations in paragraph 20.

21.     When Plaintiff and Sykes complained about being sexually assaulted, they were criticized and ridiculed for being "bitches" and "hoes" for complaining about sexual assaults.

**ANSWER**:  Ford lacks knowledge or information sufficient to form a belief as to whether Plaintiff and Sykes were subjected to criticism or ridicule and if so, the supposed basis of that criticism or ridicule, and on that basis denies the allegations in paragraph 21.

22.     In Plaintiff's presence, Ford employee Kevin Clayton stated, "Only thing black girls can do for me is suck my dick."

**ANSWER**:  Ford lacks knowledge or information sufficient to form a belief as to the alleged comment made in Plaintiff's presence, and on that basis denies the allegations in paragraph 22.

23.     Plaintiff witnessed a female employee performing oral sex on a team leader and Plaintiff believes the act may have been nonconsensual.

**ANSWER**:  Ford denies the allegations in paragraph 23.

24.     The sexually harassing conduct of which Plaintiff complains, was unwelcome, unwanted and non-consensual.

**ANSWER**:  Paragraph 24 contains conclusions of law to which no response is required. To the extent that paragraph 24 contains factual allegations that require a response, Ford lacks

knowledge or information sufficient to form a belief as to the allegations in paragraph 24 and on that basis, denies the allegations.

25.     Each incident described in this Count was offensive and harassing to Plaintiff who either personally endured, observed the occurrences and/or heard other women complain about them.

**ANSWER**:  Ford lacks knowledge or information sufficient to form a belief as to what Plaintiff found offensive or what she endured or observed, and on that basis denies the allegations in paragraph 25

26.     The foregoing conduct is degrading, offensive and sexually harassing to Plaintiff.

**ANSWER**:  Ford lacks knowledge or information sufficient to form a belief as to what conduct Plaintiff supposedly experienced or whether she considered that conduct offensive, and on that basis denies the allegations in paragraph 26.

27.     The foregoing incidents and others like them were severe or pervasive, altered the terms and conditions of Plaintiff's employment and subjected Plaintiff to a hostile workplace environment.

**ANSWER**:  Paragraph 27 contains conclusions of law to which no response is required. To the extent that paragraph 27 contains factual allegations that require a response, Ford denies the allegations.

28.     Plaintiff complained about sexual harassment to Human Resources but Defendant failed to take prompt remedial action.

**ANSWER**:    Ford admits that Plaintiff complained to Labor Relations at Ford's Chicago Stamping Plant about alleged violations of Ford's anti-harassment policy, but denies that Ford failed to take prompt remedial action.  Ford denies the remaining allegations in paragraph 28.

29.    As a direct and proximate result of the foregoing acts of sexual harassment, Plaintiff suffered damages, including lost time from work, anxiety, humiliation and emotional distress, and have otherwise suffered physical or psychological injuries.

**ANSWER**:  Ford denies that it engaged in any "acts of sexual harassment" and further denies that Plaintiff is entitled to any recovery.  Ford denies the remaining allegations in paragraph 29.

## COUNT 2
## TITLE VII-GENDER/SEX DISCRIMINATION

30.    Plaintiff re-alleges and incorporates paragraphs one (1) through twenty-nine (29) as though fully set forth at this place.

**ANSWER**:  Ford adopts its responses to the preceding paragraphs of the FAC as if fully set forth herein.

31.    Plaintiff was treated differently than her male counterparts.

**ANSWER**:  Ford denies the allegations in paragraph 31.

32.    Plaintiff was subjected to a hostile working environment, sexual harassment, gender discrimination and discriminatory comments from supervisors and coworkers which males are not required to endure as a condition of their employment.

**ANSWER**:  Paragraph 32 contains conclusions of law to which no response is required. To the extent that paragraph 32 contains factual allegations that require a response, Ford denies the allegations.

33.     Plaintiff was given different work assignments than male counterparts and her and other women were told that they were not being assigned to perform certain tasks "because they are women."

**ANSWER**:  Ford admits that there are thousands of jobs at the facility where Plaintiff worked and that both male and female employees may be assigned to different job assignments for a variety of legitimate, business-related reasons.  Ford denies that Plaintiff was given different work assignments based on gender.  Ford denies the remaining allegations in paragraph 33.

34.     Plaintiff was subjected to comments of a derogatory nature, including but not limited to being regularly referred to as a "bitch," "hoe," and "slut."

**ANSWER**:  Ford lacks knowledge or information sufficient to form a belief as to what comments Plaintiff was supposedly "subjected to," and on that basis denies the allegations in paragraph 34.

35.     Women in general are not viewed as equals at Defendant but rather as sexual objects.

**ANSWER**:  Ford denies the allegations in paragraph 35.

36.     Being constantly exposed to unwanted sexual comments and discussion is offensive and degrading to Plaintiff.

**ANSWER**:  Ford lacks knowledge or information sufficient to form a belief as to what conduct Plaintiff deemed "unwanted" or found to be "offensive and degrading," and on that basis denies the allegations in paragraph 36.  Ford denies the remaining allegations in paragraph 36.

37.     Plaintiff was treated differently than similarly situated male employees as they were not required to endure sexual harassment as a term and condition of their employment.

**ANSWER**:  Ford denies the allegations in paragraph 37.

38.    Plaintiff made complaints to Defendant about being exposed to a discriminatory, sexually harassing and hostile work environment.

**ANSWER**:    Ford admits that Plaintiff complained to Labor Relations at Ford's Chicago Stamping Plant about alleged violations of Ford's anti-harassment policy.  Ford denies the remaining allegations in paragraph 38.

39.    Defendant failed to stop and/or remedy the harassment, and male supervisors and employees referred to Plaintiff as a "bitch."

**ANSWER**:  Ford denies the allegation in paragraph 39.

40.    Defendant failed to promptly discipline or reassign any males whom Plaintiff complained and did not conduct a thorough or timely investigations of Plaintiff's complaints.

**ANSWER**:  Ford denies the allegations in paragraph 40.  Ford further avers that it is not required to discipline or reassign male employees each time a complaint is made, regardless of whether the complaint is corroborated.

41.    As a direct and proximate result of the foregoing acts of gender discrimination, Plaintiff was damaged in that she lost and/or was deprived of income opportunities, suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER**:  Ford denies that it engaged in any "acts of gender discrimination" and further denies that Plaintiff is entitled to any recovery.  Ford denies the remaining allegations in paragraph 41.

## COUNT 3
## RACE DISCRIMINATION UNDER §1981

42.    Plaintiff re-alleges and incorporates paragraphs one (1) through thirteen (13) as though fully set forth at this place.

**ANSWER**:  Ford adopts its responses to the preceding paragraphs of the FAC as if fully set forth herein.

43.    Plaintiff is an African-American female.

**ANSWER**:  Ford admits the allegations in paragraph 43.

44.    Defendant's treatment of the Plaintiff denied her the full and equal treatment benefit of all laws for the security of persons and property "as is enjoyed by white citizens" in violation of 42 U.S.C. §1981.

**ANSWER**:  Paragraph 44 contains conclusions of law to which no response is required. To the extent that paragraph 44 contains factual allegations that require a response,  Ford denies the allegations.

45.    Plaintiff as an African-American was subjected to a racially hostile workplace environment that provided similarly situated white employees more favorable terms and conditions of employment.

**ANSWER**:  Paragraph 45 contains conclusions of law to which no response is required. To the extent that paragraph 45 contains factual allegations that require a response, Ford denies the allegations.

46.    White employees were given preference in promotions, especially at Ford Stamping Plant.  For example:

**ANSWER**:  Ford denies the allegations in the introductory portion in paragraph 46.

a.   Hourly production line workers in Ford's Assembly and Stamping Plants are subject to the instructions of salaried Supervisors or Managers of various titles.

13

**ANSWER**:  Ford admits that it employs salaried supervisors and managers who manage various aspects of Ford's business operations consistent with the terms of the applicable collective bargaining agreements.  Ford denies the remaining allegations in paragraph 46(a).

      b.  Ford promotes some hourly employees into lower-level manager roles, carrying titles of "Team Leaders" and "Utilities" (Utilities assist Team Leaders and serve in their place in their absence).

**ANSWER**:  Ford denies that Team Leaders and Utilities are "lower-level managers" and that Utilities' job functions consist of assisting Team Leaders.  Ford admits that hourly employees are, at times, selected into hourly classifications of Utilities and Team Leaders.  Ford denies the remaining allegations in paragraph 46(b).

      c.  Reassignment to the positions of Team Leaders and Utilities are considered promotions and are accompanied with increased levels of managerial responsibilities and wage increases and/or increased overtime opportunities.

**ANSWER**:  Ford admits that selection to Team Leader and Utility classifications are considered promotions.  Ford admits that, consistent with the collective bargaining agreements, Team Leaders and Utilities typically have an hourly wage higher than regular production workers.  Ford avers that overtime availability and hours are dependent on a variety of legitimate factors, but not on race.  Ford denies the remaining allegations in paragraph 46(c).

      d.  Between 2012 and 2016, Ford was short on "Utilities" in its Stamping Plant.

**ANSWER**:  Ford denies the allegation in paragraph 46(d).

      e.  Ford, through its white Supervisors, including Brad Swing and Roy Erdman trained Plaintiff and other African American employees as "Utilities" and

14

had them working for many months in that position in an "acting as" capacity.

**ANSWER**:  Ford denies the allegations in paragraph 46(e).  Ford avers that employees are cross-trained, at times, for purposes of versatility.

    f.   Ford promoted a white co-worker from the assembly line who had not been previously trained as a Utility named Kevin Clay into the Utility position over Plaintiff and other African American employees that had been trained for that position and who had been "acting as" Utilities.

**ANSWER**:  Ford denies the allegations in paragraph 46(f).  Ford further avers that Kevin Clay is African-American.

    g.   Ford did not pay Plaintiff the same hourly rate for similar work being performed by other white Utilities on their shift and in their department.

**ANSWER**:  Ford denies the allegations in paragraph 46(g).

    h.   Of approximately twelve (12) Utilities on First Shift, none were black.

**ANSWER**:  Ford denies the allegations in paragraph 46(h).

    i.   Eventually, Plaintiff was informed that if she wanted to work as a Utility, she needed to apply for an open Utility position on 3rd Shift – a less desirable shift.

**ANSWER**:  Ford denies the allegations in paragraph 46(i).  Ford avers that job postings may be shift-specific and that employee seniority generally governs shift assignment consistent with the terms of the collective bargaining agreement.  Ford further avers that which shift is or is not "desirable" is a matter of individual employee preference.

j. Upon moving to Third Shift, Plaintiff experienced that white Supervisors Ed Smith and Mark Olsen repeatedly denied black female employees including herself and another African-American females proportional overtime opportunities relative to similarly situated white employees.

**ANSWER**: Ford denies the allegations in paragraph 46(j). Ford avers that overtime availability is based on a variety of legitimate factors, but not on race.

k. Supervisors Smith and Olsen frequently gave overtime to white male employee Octavia to perform set-up utility work, despite his job classification as a Schuler, because Plaintiff would otherwise receive the overtime chance by virtue of being at the top of the Overtime Equalization list.

**ANSWER**: Ford denies the allegations in paragraph 46(k).

l. Plaintiff complained about this to Don Byers, but when Byers investigated, he found that Supervisor Olsen admitted misclassifying Octavia to allow him overtime, but that Olsen refused to provide equal overtime opportunities to African-American utilities.

**ANSWER**: Ford lacks knowledge or information sufficient to form a belief as to what Plaintiff may have shared with UAW representative Don Byers, and what UAW representative Don Byers 'found' as part of the investigation Plaintiff alleges occurred, and on that basis, denies the remaining allegations in paragraph 46(l).

m. In 2015, Plaintiff applied for a promotion to "Team Leader."

**ANSWER**: Ford admits the allegations in paragraph 46(m).

16

n. Plaintiff was told she "did not have enough knowledge" and was not even interviewed for the position, however, Tracy Longtin, a white employee with less than one year of seniority and experience at Ford was promoted to the Team Leader position.

**ANSWER**:  Ford admits that Tracy Longtin was selected as a Team Leader and that she is Caucasian.  Ford denies the remaining allegations in paragraph 46(n).

o. At the time Longtin was promoted to Team Leader over Plaintiff, only three of more than twenty Team Leaders and Utilities on First Shift at the Stamping Plant were African-American.

**ANSWER**:  Ford denies the allegations in paragraph 46(o).  Ford avers that shift placement is governed by the terms of the collective bargaining agreement.

47. From 2012 through Plaintiff's termination, Defendant tolerated a racially discriminatory workplace environment in which symbols of racism were permitted to be posted and to remain in plain sight of African-American employees, such as:

**ANSWER**:  The introductory portion of paragraph 47 contains conclusions of law to which no response is required.  To the extent that the introductory portion of paragraph 47 contains factual allegations that require a response, Ford denies the allegations.

a. A noose had been hung in the Stamping Plant in plain view of Plaintiff;

**ANSWER**:  Ford denies the allegations in paragraph 47(a).

b. Constant reminders of racism had been painted in the restroom and Plaintiff had been forced to endure those reminders.  By way of example, these statements included "Why did you hire all these niggers?" Despite

17

numerous complaints, Defendant permitted this particular statement to remain posted in the restroom for a substantial period of time.

**ANSWER**:  Ford admits that on one occasion in March 2015, graffiti was found on a restroom wall at the Chicago Stamping Plant with language similar to that quoted.  Ford denies that it allowed the statement to remain in the restroom for a substantial period of time.  Ford avers that it promptly removed the graffiti.  Ford denies the remaining allegations in paragraph 47(b).

48.     Racial (and sexist) epithets have been yelled by white employees toward black employees at the Stamping Plant, including in Plaintiff's presence. Plaintiff personally witnessed a white employee yelling that an African-American female was a "black nigger bitch" while threatening to stab her with a screwdriver. Despite complaints by Plaintiff and others, the white employee was permitted to continue working that day and was only penalized with nominal discipline.

**ANSWER**:  Ford lacks knowledge or information sufficient to form a belief as to what Plaintiff allegedly witnessed, and on that basis denies the allegations in paragraph 48.  Ford denies the remaining allegations in paragraph 48.

49.     As a result of the foregoing intentional conduct, Plaintiff has been denied equal rights and have been denied equal enjoyment of the benefits, privileges, terms and conditions of employment as white employees.

**ANSWER**:  Paragraph 49 contains conclusions of law to which no response is required. To the extent that paragraph 49 contains factual allegations that require a response, Ford denies the allegations in paragraph 49 and incorporates its responses to paragraphs 44 to 49 (including sub-parts) which appear to be the "foregoing intentional conduct" alleged in this paragraph.

18

50.     As a direct and proximate result of the foregoing acts of gender discrimination, Plaintiff was damaged in that she lost and/or was deprived of income opportunities, suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER**:  Ford denies that it engaged in any "acts of gender discrimination" and further denies that Plaintiff is entitled to any recovery.

### COUNT 4
### TITLE VII-RETALIATION

51.     Plaintiff re-alleges and incorporates paragraphs one (1) through fifty (50) as though fully set forth at this place.

**ANSWER**:  Ford adopts its responses to the preceding paragraphs of the FAC as if fully set forth herein.

52.     Plaintiff adopts and incorporates by reference her allegations of retaliation alleged in her EEOC Charge.

**ANSWER**:  Ford incorporates its responses to the preceding paragraphs of the FAC as if fully set forth herein.  Ford further denies the allegations of wrongful conduct contained in the cited EEOC Charge.

53.     Plaintiff was retaliated against for refusing sexual advances from supervisors and making formal complaints about sexual advances, comments, innuendo, and lurid foul and offensive language.

**ANSWER**:  Ford denies the allegations in paragraph 53.

54.     As a result of Plaintiff's complaints of sexual harassment and discrimination, supervisors went out of their way to make Plaintiff's job more difficult and took extra measures to subject Plaintiff to increased scrutiny and/or discipline.

**ANSWER**: Ford denies the allegations in paragraph 54.

55.    In retaliation for the Plaintiff's numerous complaints and for filing charges of discrimination with the EEOC, Defendant retaliated against Plaintiff and treated Plaintiff differently than others in the following ways:

**ANSWER**: Ford denies the allegations in the introductory portion of paragraph 55.

    a.   Repeatedly unfairly disciplining Plaintiff;

**ANSWER**: Ford admits that Plaintiff has been disciplined multiple times during her employment for a variety of reasons, but denies that Plaintiff was ever unfairly disciplined or that any discipline was in retaliation for Plaintiff engaging in protected activity. Ford denies the remaining allegations in paragraph 55(a).

    b.   After Plaintiff complained about being sexually harassed by Supervisor Rich Murray, Murray told Plaintiff "you aren't running the line anymore";

**ANSWER**: Ford denies the allegations in paragraph 55(b).

    c.   Although Plaintiff had been "acting as" a Utility (a lower level managerial position) and was entitled a raise and official promotion in title, Murray refused to officially promote Plaintiff;

**ANSWER**: Ford denies the allegations in paragraph 55(c).

    d.   Murray demoted Plaintiff from working as a Utility and reassigned her back to a non-managerial position on the production line;

**ANSWER**: Ford denies the allegations in paragraph 55(d). Ford avers that promotions and job assignments are determined based on a variety of legitimate factors, but not based on protected activity.

    e.   Sent Plaintiff home early for the remainder of a shift without pay;

20

**ANSWER**:  Ford denies the allegations in paragraph 55(e).  Ford avers Plaintiff was disciplined prior to her complaint about Murray, and that she received a balance of shift penalty for being out of her work area after she had been previously counseled for the offense, but denies that it was in retaliation for any protected activity.

        f.  Denied Plaintiff overtime opportunities that were otherwise offered to employees who did not complain.

**ANSWER**:  Ford denies that Plaintiff was denied overtime opportunities in retaliation for any protected activity.  Ford further avers that overtime opportunities are determined based on a variety of legitimate factors, but not on protected activity.  Ford denies the remaining allegations in paragraph 55(f).

56.  Furthermore, Defendants retaliated against Plaintiff for her complaints of sexual harassment and discrimination and her EEOC charges, by terminating Plaintiff from Ford despite her sixteen-year tenure with the company.

**ANSWER**:  Ford denies the allegations in paragraph 56, except to admit that Ford terminated Plaintiff's employment for legitimate reasons and that Plaintiff's termination was not related to any protected activity.

57.  Defendant's reason for Plaintiff's termination was false and merely pretext for illegal retaliation.

**ANSWER**:  Ford denies the allegations in paragraph 57.

58.  Defendant's retaliatory acts against Plaintiff constitute materially adverse employment actions.

**ANSWER**:  Paragraph 58 contains conclusions of law to which no response is required. To the extent that paragraph 58 contains factual allegations that require a response, Ford denies the allegations in paragraph 58.

59.    There is a causal connection between Plaintiff's protected activity and Defendant's retaliatory actions.

**ANSWER**:  Ford denies the allegations in paragraph 59.

60.    Similarly situated employees who did not engage in protected activity were treated more favorably than Plaintiff.

**ANSWER**:  Ford denies the allegations in paragraph 60.

61.    As a direct and proximate result of the foregoing acts of gender discrimination, Plaintiff was damaged in that she lost and/or was deprived of income opportunities, suffered anxiety, humiliation and emotional distress, and has otherwise suffered physical or psychological injuries.

**ANSWER**:  Ford denies that it has engaged in any "acts of gender discrimination" and further denies that Plaintiff is entitled any recovery. Ford denies the remaining allegations in paragraph 61.

## COUNT 5
## BATTERY

62.    Plaintiff re-alleges and incorporates paragraphs one (1) through forty-one (41) as though fully set forth at this place.

**ANSWER**:  Ford adopts its responses to the preceding paragraphs of the FAC as if fully set forth herein.

63.    Plaintiff was subjected to a harmful or offensive touching, without her consent, by one or more of Defendant's supervisors, managers and/or employees.

22

**ANSWER**:  Ford denies the allegations in paragraph 63.

64.     Defendant took no steps to prevent Plaintiff from suffering a battery.

**ANSWER**:  Ford denies the allegations in paragraph 64, including but not limited to the allegation that Plaintiff suffered a battery.

65.     The supervisors, managers, and/or employees engaging in this conduct did so with the intent to harm the Plaintiff.

**ANSWER**:  Ford denies the allegations in paragraph 65.

66.     As a direct and proximate result of the foregoing conduct, the Plaintiff suffered personal injuries, bodily damage, became sore, lame, sick and disabled, suffered mental anguish, anxiety and humiliation, emotional distress and other forms of personal injury and bodily damage.

**ANSWER**:  Ford denies that Plaintiff suffered any actionable injury or that she is entitled to any recovery.  Ford denies the remaining allegations in paragraph 66.

## COUNT 6
## ASSAULT

67.     Plaintiff re-alleges and incorporates paragraphs one (1) forty-one (41) as though fully set forth at this place.

**ANSWER**:  Ford adopts its responses to the preceding paragraphs of the FAC as if fully set forth herein.

68.     The foregoing acts by the Defendant were done intentionally.

**ANSWER**:  Ford denies the allegations in paragraph 68.

69.     These acts placed Plaintiff in fear or reasonable apprehension of immediate battery or harmful or offensive touching.

**ANSWER**:  Ford denies the allegations in paragraph 69.

70.     Defendant took no steps to prevent Plaintiff from being assaulted.

**ANSWER**:  Ford denies the allegations in paragraph 70, including but not limited to the allegation that Plaintiff suffered an assault.

71.     As a direct and proximate result of the Defendant's conduct, the Plaintiff was damaged.

**ANSWER**:  Ford denies that Plaintiff suffered any actionable injury or that she is entitled to any recovery.  Ford denies the remaining allegations in paragraph 71.

## COUNT 7
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (PRESERVED FOR APPEAL)

72.     Plaintiff re-alleges and incorporates paragraphs one (1) through seventy-one (71) as though fully set forth at this place.

73.     Defendant, through its supervisors, managers and employees, intended to cause Plaintiff severe emotional distress.

74.     Defendant's conduct and the conduct of its supervisors, managers and employees was extreme, outrageous and beyond the bounds of moral decency.

75.     Defendant's conduct and the conduct of its supervisors, managers and employees was so outrageous that no reasonable person could be expected to endure it.

76.     As a direct and proximate result of the Defendant's conduct and the conduct of its supervisors, managers and employees, the Plaintiff suffered severe emotional distress and was damaged.

**ANSWER**:   Ford states that no responsive pleading is required in response to paragraphs 72 through 76 of the FAC, since the Court has previously dismissed this claim and Plaintiff re-pleads it for purposes of appeal only.  To the extent a further response is required, Ford

denies the allegations in Count 7 and incorporates its prior responses to paragraphs 1-71 as if fully set forth herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, by and through his [*sic*] attorneys, ED FOX & ASSOCIATES, LTD., requests the following relief:

A.     That Plaintiff be granted general and compensatory damages in an amount to be determined at trial;

B.     That Plaintiff be granted special damages, including lost wages and benefits, in a sum to be ascertained;

C.     That Plaintiff be granted punitive damages in an amount to be determined at trial;

D.     That the Court grant to Plaintiff his reasonably incurred attorneys' fees, costs, litigation expenses, and pre-judgment interest; and

E.     That the Court grant such other and further relief as the Court may deem just or equitable.

**ANSWER**: Ford denies that Plaintiff is entitled to any of the relief requested in the FAC, including in the "Prayer for Relief."

## AFFIRMATIVE DEFENSES

In addition to the denials set forth above, Ford asserts the following defenses.  In pleading these defenses, Ford does not admit that it bears the burden of proof, production or persuasion on such defenses.  Further, Ford reserves the right to amend its Answer, to add or delete defenses, and to add such counterclaims as may become necessary after reasonable opportunity for investigation and discovery.

## FIRST AFFIRMATIVE DEFENSE

The FAC, in whole or in part, fails to state a claim upon which relief can be granted because Plaintiff cannot satisfy each of the elements of the causes of action asserted, including a hostile work environment, gender discrimination, race discrimination, retaliation, battery, assault, and intentional infliction of emotional distress ("IIED") under applicable law.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims under Title VII are barred in whole or in part to the extent Plaintiff failed to satisfy administrative prerequisites to filing suit, including but not limited to timely filing an administrative charge and/or timely filing suit after receiving notice of the right to sue.

## THIRD AFFIRMATIVE DEFENSE

Plaintiff's Title VII claims are barred to the extent relief is sought for alleged acts outside the scope of the EEOC Charge of discrimination on which she relies for her Title VII claims in this lawsuit.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by applicable limitations periods, to the extent she asserts liability claims from before the start of such limitations periods.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred in whole or in part by reason of her own actions or course of conduct under the doctrines of estoppel, waiver, or unclean hands.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent she has failed to mitigate damages or otherwise avoid harm, and any recovery must be reduced accordingly.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, were caused by her own actions or failure to act or otherwise caused by individuals or events over whom/which Defendant had no control.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's hostile work environment claim is barred in whole or in part to the extent Plaintiff cannot show that Ford knew or should have known of alleged harassment and failed to take prompt and effective remedial action.

### NINTH AFFIRMATIVE DEFENSE

Alternatively, Plaintiff's hostile work environment claim is barred because Ford acted reasonably in accordance with Ford's policies by exercising reasonable care to prevent and promptly correct any alleged harassing behavior, and Plaintiff unreasonably or untimely failed to avail herself of preventive or corrective opportunities provided, or otherwise failed to avoid harm.

### TENTH AFFIRMATIVE DEFENSE

Plaintiff's hostile work environment claim is barred to the extent that alleged tangible, adverse employment actions were not causally related to the alleged conduct of any Ford salaried personnel as set forth in the FAC.

### ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent the acts about which Plaintiff complains do not constitute adverse employment actions or tangible adverse employment actions under applicable law.

### TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because the employment actions complained of herein were based upon legitimate, non-discriminatory and non-retaliatory reasons. Alternatively, Ford would have taken the same employment actions in any event for legitimate reasons.

## THIRTEENTH AFFIRMATIVE DEFENSE

Any recovery of damages for purported violations of Title VII is limited to the statutory maximum under applicable law.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claim for damages should be offset or reduced to the extent such claimed damages are compensated by other sources or caused by events unrelated to Defendant's conduct.

## FIFTEENTH AFFIRMATIVE DEFENSE

To the extent any alleged intentional discriminatory and/or wrongful conduct was committed by Defendant's agents (which Defendant denies), said conduct was outside the scope of the agent's authority and was contrary to Defendant's good faith efforts to comply with applicable law.

## SIXTEENTH AFFIRMATIVE DEFENSE

Defendant is not liable for punitive damages because employment actions about which Plaintiff complains were taken consistent with the collective bargaining agreement.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff is not entitled to punitive damages, and any award of punitive damages may violate the U.S. Constitution and/or the Illinois Constitution, because Ford did not commit any malicious act against Plaintiff or with reckless indifference to the rights of Plaintiff.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims for punitive damages are barred because Ford engaged in good faith efforts to comply with Title VII.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims for punitive damages are barred because no salaried personnel of Ford acted with the requisite mental state toward Plaintiff.

### TWENTIETH AFFIRMATIVE DEFENSE

To the extent allegations in this case relate to events that purportedly occurred years before this lawsuit was filed, the passage of time has prejudiced Ford because, among other things, witnesses' recollection of events has dimmed, witnesses are no longer employed by Ford or available for purposes of discovery or trial. Accordingly, evidence in support of any such claims and any relief requested is barred by the doctrine of laches.

### TWENTY FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent she fails to plead or prove elements of such claims in accordance with Court Orders under the law of the case doctrine.

### TWENTY SECOND AFFIRMATIVE DEFENSE

Plaintiff's state law claims are barred under the Labor Management Relations Act to the extent such claims call for interpretation of provisions in the collective bargaining agreement.

### TWENTY THIRD AFFIRMATIVE DEFENSE

Plaintiff's state law tort claims for battery and IIED are barred because Plaintiff's remedy, if any, for such injuries is governed by the Illinois Workers' Compensation law.[2]

### TWENTY FOURTH AFFIRMATIVE DEFENSE

Any claim for equitable relief may be barred because Plaintiff has an adequate remedy at law.

### TWENTY FIFTH AFFIRMATIVE DEFENSE

---

[2] Since Plaintiff has re-alleged her IIED claim to preserve it for appeal, Defendant asserts this defense to Plaintiff's IIED claim. *See Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 449 N.E.2d 125 (Ill. 1983).

Plaintiff's state law tort claim for IIED are barred as preempted by the Illinois Human Rights Act.  *See* note 2 *supra*.

**TWENTY SIXTH AFFIRMATIVE DEFENSE**

To the extent that Plaintiff could have been disciplined based on evidence acquired during discovery in this case, any recovery by such Plaintiff is limited by the doctrine of after-acquired evidence.

**TWENTY SEVENTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred to the extent that they are based on any allegations that are inconsistent with or outside the scope of the agreement reached between the parties (*see Van et al. v. Ford Motor Co*., No. 14-cv-8708 (N.D. Ill.) ("*Van*") Dkt. 389) and ordered by the Court  (*Van* Dkt. 391).

Ford reserves its right to amend and state additional defenses upon further investigation and discovery.

WHEREFORE, having fully answered Plaintiff Shranda Campbell's Fourth Amended Complaint, Defendant Ford Motor Company prays that:

A.  Plaintiff Shranda Campbell's Fourth Amended Complaint be dismissed with prejudice and that Plaintiff take nothing thereby;

B.  Ford be awarded its costs and reasonable attorneys' fees incurred in connection with the defense of this action; and

C.  Ford be awarded such other and further relief as the Court deems just and proper.

DATED:  February 4, 2020

Respectfully submitted,

/s/ Katherine V.A. Smith

Kathleen M. Nemechek  N.D. Ill. No. 50139
Timothy S. Millman  N.D. Ill. No. 44398
BERKOWITZ OLIVER LLP
2600 Grand Boulevard, Suite 1200
Kansas City, Missouri 64108
Telephone:  816.561.7007
Facsimile:  816.561.1888
knemechek@berkowitzoliver.com
tmillman@berkowitzoliver.com

Katherine V.A. Smith (admitted *pro hac vice*)
Molly T. Senger (admitted *pro hac vice*)
Andrea R. Lucas (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
Telephone:  202.955.8500
Facsimile:  202.467.0539
ksmith@gibsondunn.com
msenger@gibsondunn.com
alucas@gibsondunn.com

Derek Barella
SCHIFF HARDIN LLP
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
Telephone:  312.258.5500
Facsimile:  312.258.5600
dbarella@schiffhardin.com

*Counsel for Ford Motor Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of February, 2020, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, and served the foregoing by email as follows:

Edward M. Fox
Jaclyn Diaz
Ed Fox & Associates, Ltd.
300 West Adams Street
Suite 330
Chicago, IL 60606
(312) 345-8877
efox@efoxlaw.com
jdiaz@efoxlaw.com

*Counsel for Plaintiff*


/s/ Katherine V.A. Smith
*Counsel for Defendant Ford Motor Company*